Marjorie S. Soforenko,
                    Plaintiff

v.

David Samuels
  and

University of Massachusetts
Amherst, MA
  and

University of Connecticut School of Social Work
1798 Asylum Ave.
West Hartford, CT  06117
  and

City of West Hartford, CT
West Hartford Police Department
  and

Springfield Police Department / City of Springfield
  and

Northampton Police Department / City of Northampton
  and

Federal Bureau of Investigation
~~Center Plaza, # 600~~   935 Pennsylvania Ave.   20535
  MSS



COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT DEPT.

Hampden, ss.                                          Docket #: 08-943

Marjorie S. Soforenko,                    )
              Plaintiff                    )
                                          )
v.                                         )
                                          )
David Samuels,                             )
and                                        )
University of Massachusetts                )
Amherst, MA                                )
and                                        )
Springfield Police Department/City of Springfield   )
              Defendants                   )
and                                        )
Northampton Police Department/City of Northampton   )
              Defendents                   )

COMPLAINT FOR SLANDER PER SE AND SLANDER AND
VIOLATION OF CIVIL RIGHTS BY DAVID SAMUELS AND
THE SPRINGFIELD POLICE DEPARTMENT AS WELL AS
THE NORTHAMPTON POLICE DEPARTMENT—IT IS CRIME
SLANDER PER SE AND UNCHASTITY SLANDER PER SE
AND ALL OTHER TYPES OF SLANDER AS WELL AS A
COMPLAINT FOR ALL OTHER REASONS

Now comes Marjorie S. Soforenko, plaintiff, and states that the defendants, David
Samuels and the Springfield Police Department and the Northampton Police Department,
have been committing against her slander per se and any other type of slander, as well as
violating her civil rights, since April, 2004 to current.

Attached to this complaint is the police report that the plaintiff filed against the
defendant, David Samuels, on July 29, 2008 as well as amendments to the police report.
David Samuels convinced the Springfield Police Department to criminally harass,
slander, and stalk Ms. Soforenko and violate all of her civil rights since April, 2004 –
current. David Samuels may also be using private detectives to criminally harass,
slander, and stalk Marjorie Soforenko. In addition, David Samuels and his father, Dr.
Samuels, also have criminally harassed, slandered, and stalked Ms. Soforenko,
personally. The police report explains some of what they have done.

1

There is a three year statute of limitations for slander in Massachusetts. There is a two year statute of limitations for slander in Connecticut. The slander occurred in Massachusetts and Connecticut. Some also occurred in Colorado. Some of the acts of slander per se and slander that Ms. Soforenko has had to deal with that fall within the statute of limitations are as follows:

1. The defendant, David Samuels, called my brother's law office on or about November, 2005 and told my brother that I forced myself on him. I was given this information by his legal secretary on or about January, 2006. In essence, he was saying that I sexually assaulted him. I did no such thing. We had two dates in November and December, 2003. On the second date we had a little bit of sex. No clothes came off. In addition, there was mutual consent to the sex. At the end of the second date the defendant told me that he had a good time, put my coat on for me, walked me to my car and then said, "I will speak to you soon." This is slander per se as he lied and was telling my brother that I had committed a crime. In addition, he was telling my brother that I was unchaste.

2. Continually, between April, 2004 – current, I have been hearing people say to me, "David says you are a whore." They have also said, "You are a whore." They have gotten this from what David Samuels did to me in downtown Northampton in April, 2004. As explained in the police report, in April, 2004 the defendant was yelling at the top of his lungs in downtown Northampton how he had sex with me and described it in detail. He also called me a whore and had other people calling me a whore. This is slander per se regarding unchastity.

3. The defendant caused the Springfield Police Department to believe that she was stalking him, yet he did not press charges against the plaintiff for stalking or ask for a restraining order. For example, I would go into my bank and the tellers would say to me, "Are you stalking David Samuels?" This was very traumatizing – David Samuels was stalking me and he was doing it through the police department. One of the tellers told me that the police had told them to say this to me. I believe that the motivation for David Samuels to stalk me and criminally harass me is that he was up for tenure at the University of Massachusetts, so he wanted to pin his criminal behavior in Northampton on me, i.e. yelling at the top of his lungs in downtown Northampton about how he had sex with me and describing it in detail as well as other harassment, i.e. having that man say to me "David is not through with you yet!". I heard people around me verify that David was up for tenure and that is why he wanted to pin his behavior on me. These people were either his friends or/and from the police department or/and private detectives.

David and the police department were committing slander per se by saying that I was stalking him as stalking is a crime and I was not stalking David Samuels. The tellers were harassing me all through 2004 to current so this slander comes within the statute of limitations.

4. It is my understanding that David Samuels slandered Ms. Soforenko to the police department by telling the police department that she sexually assaulted him. His exact

2

words may have been "Marjorie Soforenko forced herself on me." This is slander per se as the defendant was accusing the plaintiff of sexually assaulting him which the plaintiff did not do. He was lying. During our second date, after we came back from a movie (he paid for my ticket, I paid for the refreshments) and went to his apartment we had a little sex, our clothing did not come off. In addition, when our date was over he said that he had a good time, put my coat on for me, walked me to my car, and said, "I will talk to you soon." The defendant is lying and slandering me with slander per se when he says the plaintiff forced herself on him.

5. At the University of Connecticut, where I attended the school of social work during 2007-2008, there was Diversity Day on August 30, 2007. At Diversity Day where all the students and faculty were present in a large auditorium, Talitha Conyers, the Admissions Director, was sitting 2 or 3 rows behind me. She stood up, looked at me and said, "David Samuels says that you forced yourself on him. He also told your brother about this." She said this in a very loud voice so all the students and faculty could hear her. I said nothing back. I was too shocked and stunned that someone could be saying such things about me and slandering me.

6. Also, on Diversity Day, August 30, 2007, at the University of Connecticut School of Social Work, students or the police department or private detectives, I am not sure who, were shouting at me, "David says you are a whore! David says you are a whore!" Talitha Conyers, the Admissions Director, and Cheryl Jackson- Morris, the interim Director of Field Placements will be able to verify all of this. Ms. Jackson-Morris was sitting in close proximity to Talitha Conyers.

7. David Samuels involved the police department or/and the FBI or/and private detectives in the above slander per se as well as other slander and slander per se that will be determined through interrogatories, and if necessary, through depositions.

8. David Samuels, in April, 2004 to current, has been telling people that I will not talk to them. When he first started doing this I was working for Carrie Robinson, Esq. doing real estate closings. I worked for her until September, 2004. In 2007, I was working for myself doing real estate closings and was asked by an employee of a Title Company who was having me do a closing for them to give them the names of some attorneys who could draw up a deed. I gave the names of Carrie Robinson, Esq. and Karen Murphy, Esq.. David Samuels did not know me well enough to be passing around such slander. I only went on two dates with him. In addition, I do talk to people. I do not know what he was talking about and it is and was none of his business. Also, when I had business at the Springfield Courthouse in 2004 or 2005, some one told me that he was saying this about me.

9. David Samuels involved his father with slandering me through slander per se and slander. My understanding from a doctor that I was seeing, Dean Solomon, MD, was that the defendant's father called Dean Solomon, MD, explained that he was a doctor and had my doctor violate HIPPA. He told my doctor that I had forced myself on the defendant, his son. This was entirely untrue, as I have explained in the above paragraphs.

10. David Samuels father also may have been involved in encouraging his son to slander me as I have described in each of the paragraphs of this complaint. Interrogatories will determine this.

11. In July, 2008, the plaintiff was going about her everyday living activities. She was walking down a public street when she heard someone yell at her, "David rubbed your sides up and down. You must have liked it!" This may have been a private detective or/and the police department or/and the FBI. It was slander per se regarding my being unchaste.

12. In 2006, the plaintiff had a Motion hearing at a Probate and Family Court in Worcester County. It was for a Guardian Ad Litem assignment. I was asking the Judge if I could do a home study in Virgina for the case I was working on. The Judge granted me my request and said that the state would pay my expenses. She also said, "David Samuels started all of this." The Judge was Judge Susan Ricci. David Samuels was slandering me to my place of employment, the Court system.

13. In April ,2004, the plaintiff called the Northampton Police Department to explain that the defendant was harassing her and spreading it around how she had sex with him in intimate detail, including in downtown Northampton on April 15, 2004 when the initial harassment started in downtown Northampton. The Northampton Police Department suggested that I e-mail him a message that he needed to stop harassing me and I should be respected by him. They also said I should call our interaction a relationship. I did this and allowed the officer I was talking to help me frame the e-mail. Despite this, David Samuels continues to harass me and slander me. In addition, the Springfield Police Department and perhaps the Northampton Police Department have been harassing me and stalking me and slandering me from April, 2004 to current.

14. After the initial incident with David Samuels on April 15, 2008, where he was yelling out to everyone in downtown Northampton how he had sex with the plaintiff in intimate detail, the plaintiff went home. She was severely traumatized. The next day, the plaintiff's menstrual period started and she had it every day for the next year, until April, 2005. Sometimes she hemoraged as a result of the traumatization. This included at work for North Central Human Services in Gardner, MA. Due to hemoraging she went through her clothing and left a bloody mess on a stool while interviewing a client. The plaintiff's primary care physician can verify this.

15. As a result of the defendants' slander and harrassment, I lost an interview for an elementary guidance counselor position in the Southwick Tolland School System.

16. As a result of the defendents' slander and harrassment, I lost an interview at a Greenfield Crisis Center. Dan Sontag, an employee at this agency, can verify this.

17. As a result of the defendents' slander and harassment, I was in the hospital 4 times since November, 2007 – in November, 2007, in February, 2008, in August, 2008 and in

September, 2008. I have been completely traumatized, stunned, shocked and humiliated by the defendents.

18. As a result of the defendents' slander and harassment, I have numerous hospital bills and have had to go to the emergency room at Mercy Hospital numerous times. I have been completely traumatized, stunned, shocked and humiliated by the defendents.

19. As a result of the defendant's slander and harassment, I have had to put off asking some one on a date that I really liked. He asked me last year if I wanted to play klezmer music with him at a Music and Mountains weekend sponsored by the Appalacian Mountain Club. I could not because I was busy writing a paper for a class I was taking at the University of Connecticut School of Social Work (I have a 3.7 cumulative point average from taking 13 credits). I wanted to reciprocate but because of the defendents' harassment, stalking and slander I have not been able to. We have been e-mailing each other for the past 4 or 5 years. This is loss of consortium.

20. I have been in the hospital, as I explained in Paragraph 17, as a result of the defendents' rather than applying for jobs and earning a living. Consequently, I am now applying for welfare and Social Security to pay my bills and it will not cover all my medical bills as well as other bills. I am also applying for MassHealth. The defendents' caused me to have to do this.

21. I also have asthma as a result of the harassment, stalking, slander per se and slander. During the past 5 years since this matter started I have been on singular, advair and an albuterol inhaler to help me breath. I also went to an asthma specialist. My primary care physician will verify this.

22. The plaintiff knows that police departments were involved because a therapist that she was seeing, Judith Nissenbaum from Riverbend Medical Group in Chicopee, MA, told the plaintiff that she was being investigated. She also told the plaintiff that she did not need therapy.

23. Dr. Honeyman from Riverbend Medical Group told the plaintiff that the reason he and Dean Solomon, MD listened to David Samuel's father was because he was a doctor. This was a clear violation of HIPPA. So what if he was a doctor. The plaintiff has relatives who are doctors and they would never do such a thing. One is the retired Dean of the University of New Mexico Medical School. Another is the ex-husband of a cousin who taught at Marquette Medical School. In addition, I am an attorney, in good standing with the Massachusetts Bar. In addition, I am a licensed guidance counselor and a licensed social worker. I had good references to get these licenses. I have worked as a social worker before and never violated confidentially rules. I worked for two years at Springwell, Inc. in Watertown, MA when it was West Suburban Elder Services in West Newton, MA. I also worked for North Central Human Services in Gardner, MA for 14 months part time and per diem.

24. In July, 2008, I went to bed and then woke up at about 4:00 am in the morning shrieking at the top of my lungs. I shrieked and shrieked. It was blood curdling. I then noticed in the mirror that my jaw was positioned differently and my lips were different. I called crisis and I think I also went to Mercy Hospital to be examined because I was afraid to go to bed again.

24. The plaintiff is incorporating the police report that she made to the Northampton Police Department on July 29, 2008 as well as the amendments to that report. It is Record # 08-1947-OF.

25. The Springfield Police Department and the Northampton Police Department have violated the plaintiff's civil rights. In addition, there has been no criminal procedure, only harassment, stalking, slander and slander per se. Some of this I have described in the paragraphs above. This has been going on since April, 2004 – for almost 5 years.

( Continued on page 9)
12
hsr

Civil Rights that have been violated:

1. Article the seventh – No person shall be held to answer for a capital, or other infamous crime, unless on a presentment or indictment of a Grand Jury…nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law…. i.e. forcing someone to confess to something is not allowed as stated in the Bill of Rights. In addition, the plaintiff has done nothing and will confess to nothing.

2. Article the eighth – The plaintiff has not formally, in writing, been informed of the nature and cause of the accusation and has not been confronted with the witnesses against her; nor has there been compulsory process for obtaining witnesses in her favor and to have assistance of counsel in her defense. Rather, the defendents are arbitrarily stalking, harassing and slandering the plaintiff because they like the defendant, David Samuels.

3. No cruel and unusual punishment - The plaintiff has not been charged or convicted of anything, yet she is being stalked, harassed and slandered by the defendents. In addition, she is being disfigured. She has never had curviture of the spine, but her primary care physician told her that she now has curviture of the spine. In addition, the plaintiff's jaw is different as well as her lips, her eyebrows are now higher up on her forhead and the shape of her head is different. She used to have bald spots on the back of her head because her hair is very fine. These have been removed due to some of her scalp being taken off... Also, the bone above her eyes has been removed – her eyes were once deep set like her mother's and she is supposed to look like her mother. That is not the case now. The plaintiff's right ear is also being deformed and the space between her nose and her upper lip. The plaintiff was given a prescription for hydrocortisone cream 5% by her dermatologist to stop the deformity of her right ear. Her primary care physician also gave her a prescription for hydrocortisone cream 1%. In addition, the plaintiff's right arm is longer than her left arm and is bigger in width. Also, the plaintiff's nose has been shortened and is not as wide as it should be. She should have a long straight nose like her father's with a hook on the end of it when she smiles. The hook is no longer there.

Also, the plaintiff believes that the police departments use electric shock which she has felt in her eyes and on her bones and inner organs. Perhaps this is how bones are worn down. In addition, the plaintiff went to the emergency room of Mercy Hospital to show a doctor her feet and legs which were swollen and being disfigured. She was given a prescription for compression stockings which she am now wearing. She was told to wear them everyday. In another visit to the emergency room at Mercy Hospital the plaintiff was given a prescription of percoset for pain. She was given this because she told the doctor about how she had gotten up from sleeping shrieking and shrieking like how Daniel Pearls must have felt when he got his head chopped off. Also, the plaintiff's elbows are different – one is longer than the other.
There are other problems as well.

-Other civil rights that have been violated as well as criminal procedure:

harrassment

4. No charges have been filed with the police department against the plaintiff, rather there is a continued              by the police departments for almost 5 years and the plaintiff is being deformed by it and her life is put in limbo by it. Also it has caused the plaintiff to be hospitalized.          jeopardy and          n

5. There has been no due process and a hearing, rather just continued harassment including stalking and slander. There has also been attempted murder and an attempt(s) to give me a nervous breakdown.

6. The plaintiff has been hearing real people's voices as well as voices from a computer in an attempt by the FBI and/or the police department in Springfied, Northampton and West Hartford to give her a nervous breakdown and in an attempt to murder her. Please see the attached letter that I mailed to Karen Buzzard and Steven Sullam. They know what is going on and can be subpoened. Also, when the plaintiff was at her synagogue in West Hartford for evening services she was being harassed by the West Hartford Police Dept. She went to the West Hartford Police Dept. to report it. One of the officers yelled out at the plaintiff, "We're going to give you

8

a nervous breakdown!" Another officer yelled
out, "bipolar disorder! bipolar disorder!
This may also be a hate crime and I am
not bipolar. I had that diagnosis at
one time but in 2006, Dr. Nancy Arko
in Denver, Co told me I did not need
medication. She also said, "You have as
many credentials as I do, you do not
need medication." Dr. Balise at Noble
Hospital also told me I did not need
medication. I was in Colorado to take
the Colorado Bar — I had 10 references
including Judge Nesi from Bristol Probate
and Family Court. I am a member of
the Massachusetts Bar in good standing.
In addition, I have been accepted into
Fordham University School of Social Services
to get my Master in Social Work for
Fall, 2009. The acceptance letter is
attached to this complaint.    9

7. In addition, in July, 2008 the plaintiff went to the Springfield barracks of the State Police. She showed an officer her police report against David Samuels which she had filed with the Northampton Police Dept. An officer read it and gave her the statutes for stalking and criminal harassment. I was afraid to try to bring charges due to the harassment of the Springfield and Northampton Police Depts as well as the West Hartford Police Dept. This harassment included that mentioned in paragraph 6 of this section as well as in other paragraphs of this complaint, i.e. I was made to hear real people voices as well as voices from a computer, there has been as a result false imprisonment, serious emotional distress and outrageous conduct on the part of the people/agencies doing this to me. False imprisonment, serious

emotional distress and outrageous conduct
are all torts. There has also been an
invasion of privacy.

26. On or about February or March, 2004, the plaintiff went to Northampton, MA to go shopping. She stopped at Zanna's on Main St. and bought some clothing. She then left the store and started crossing the street. There were two women behind her. She heard them giggling and she heard them say, "They licked tea off of each other's lips." They must have been talking about David Samuels and myself. During our second date he made me some tea and we ended up licking it off of each other's lips.

REQUESTED RELIEF

1. The plaintiff would like a restraining order. She does not want the defendant, David Samuels, following her around, harassing her or stalking her, or slandering her or telling the police department or/and the FBI to stalk her, slander her and harass her. This is in any or all Jurisdictions. She also wants him to stay away from her as many yards as allowed by restraining orders if they are in the same vicinity.

2. The plaintiff needs an *permanent* injunction against the Springfield Police Department and/or the FBI, to stop harassing her, slandering her and stalking her. The plaintiff has done nothing to anyone and these organizations must stop listening to David Samuels as he is slandering her with slander and slander per se. Ms. Soforenko is a citizen of the United States of America. Therefore, she must be protected by all local, state and federal laws including the US Constitution and the Bill of Rights as well as by criminal procedure.

3. The plaintiff thinks that the Northampton Police Department may also be *permanent* involved in harassing her, stalking her and slandering her. Consequently, she needs an injuntion against the Northampton Police Department. She thinks this because the initial incident where David Samuels started harassing and slandering Ms. Soforenko was in Northampton on or about April, 15 , 2004. David Samuels may have slandered and lied about Ms. Soforenko to the Northampton Police Department. Ms. Soforenko is a citizen of the United States of America. Therefore, she is protected by all local, state and federal laws including the US Constitution and the Bill of Rights as well as criminal procedure.

4. The plaintiff has experienced much humiliation, pain and sufferimg from the actions of the defendents. Therefore, she is asking for $300,000.00 in damages given to her joint and several. This will help her pay medical bills not covered by medical insurance and for plastic surgery. It will also help her pay for other bills that she has been unable to pay due to her inability to work when hospitalized. For example, she had to ask Toyota Financial for extentions of time to make her car payments. They had to put four payments at the end of her loan because Ms. Soforenko was unable to make them in a timely manner. Ms. Soforenko was up-to-date with her car payments until on or about May, 2008. She bought the car in October, 2007. It will also help her make credit card payments that she was unable to make due to time off from work due to the hospitalizations.

MADE UNDER THE PAINS AND PENALTIES OF PERJURY.

Marjorie S. Soforenko          Date 7/12/09
189 Nassau Drive
Springfield, MA M01129
413-783-5812

13

STATE OF CONNECTCUT
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

Hartford, ss.                                          Docket #:

Marjorie S. Soforenko                           )
              Plaintiff                                )
                                                        )
v.                                                      )
                                                        )
David Samuels                                     )
                                                        )
and                                                    )
                                                        )
University of Massachusetts                   )
Amherst, MA                                      )
              Defendant                            )
                                                        )
and                                                    )
                                                        )
University of Connecticut School of Social Work  )
1798 Asylum Ave.                               )
West Hasrtford, CT                             )
                                                        )
and                                                    )
                                                        )
City of West Hartford, CT                      )
West Hartford Police Department            )
                                                        )
Springfield Police Department/City of Springfield,  )
Northampton Police Department/City of Northampton  )
              Defendents                           )

## CONTINUATION OF COMPLAINT

Now comes the plaintiff, Marjorie S. Soforenko, who requests of the Court that she be
able to add the following information to her Complaint.

(1)  The plaintiff would like to add the University of Massachusetts in Amherst
Massachusetts to her complaint as a defendant.  When she met with one of the Deans
of the Anthropology Department in 2004 or 2005 about the matter, the Dean told the
plaintiff that she could sue the University of Massachusetts regarding what David
Samuels did to me.  This also means that the University of Massachusetts was admitting
the guilt of David Samuels.  In addition, she said that David Samuels represents the

H

University of Massachusetts so I should sue the University of Massachusetts. Consequently, I am adding the University of Massachusetts as a defendant. David Samuels is one of the faculty members of the Anthropology Department at the University of Massachusetts/Amherst.

(2) Mr. Samuels has been continually criminally harassing me, stalking me and slandering me through the police department and or private detectives and/or the FBI from 2004 – current. Therefore, the University of Massachusetts falls within the statute of limitations.

(3) I would also like to add to my complaint that the police department or/and the FBI have used electricity on me to wear down bone and skin. Either this, or they ade me feel that way which is pain and suffering. For example, I now have little pock marks next to the outside of my eyes which makes it look like I have deep crows feet next to my eyes. In addition, I believe that my eyes are being made smaller and they are being misshapen so that I no longer look like my mother. I am supposed to have her eyes. Electricity has also been used in my genitals and it severely frightens me as it may result in loss of consortium. This has been a continuing problem. For example, it was used on me just yesterday and today. I have told my gynocologist about it, Dr. Hanni Haddad, and I will be going for an examination with him immediately so that I know what the electric shock has done.

(4) In 2006, I was appointed Guardian Ad Litem in a case with the Worcester Probate and Family Court. When I went in for a Motion, Judge Ricci said to me, David Samuels started all of this." I could not believe what I was hearing. He was now harassing me while I was at my job.

(5) I would also like to add that in the United States of America there is a Bill of Rights that states that there is Freedom of Assembly, this is the Third Article. The Third Article also states that in the United States citizens have Freedom of Speech. We also have the right to petition the Government for a redress of grievances. This includes the Commonwealth and municipalities.

(6) The following is also added to the complaint. On or about July 29, 2008, the plaintiff went to the police department to report an annoying telephone call. The police officers on duty told her that "You can sue everyone so we are trying to find something wrong with you." She was also told, "You are not a danger." Another officer said, "Everything was confidential."

(7) On Diversity Day, August 30, 2007, Talitha Conyers, the Admissions Director at the Univesity of Connecticut School of Social Work violated the Americans with Disabilities Act and the hate Crime Statute by looking at me and directing statements at me including yelling, "Bipolar Disorder! Bipoplar Disorder! Bipolar Disorder!" at the top of her lungs in the auditorium where all the students and faculty had gathered. I have had this diagnoses for many years, though there have been differing opinions. For example, two psychiatrist in 2006 said that they wanted me to get off all medication. I

did not do this as I was very used to it and I was afraid to. This was Dr. Nancy Arko in Denver, Colorado and Dr. Edward Balise at Noble Hospital in Westfield, MA. Please note, that under the Hate Crime statute , that if you are treated like a person covered by this statute, even though you do not actually have that characteristic, you are still covered by the Hate Crime Statute.

(8) On or about May 9, 2009, the plaintiff went to her synogogue for evening minyan – Beth El Synogogue in West Hartford, CT. At the minyan she was being harassed. For example, someone said, We do not want you here." There was also other harassment. The plaintiff went to the police department in West Hartford, CT to report the harassment. An officer yelled out to her the name of the law firm that she had contacted to take a slander lawsuit against David Samurels. He yelled, "Willinger, Willinger and Bucci!!" (The pliaintiff has since contacted the Connecticut State Grievance Committee for attorneys about this because attorney- client confidentiality had been violated. She also sent in a written complaint). Also, a police officer yelled out, "Bipolar disorder! Bipolar disorder! Bipolar disorder!" "Marcia Reback!" (Marcia Reback is a cousin of mine who attended the University of Connectcut and had a Master in Education from there. I had discussed her with staff at the social work school). Also, a police officer yelled out, "We're going to give you a nervous breakdown!" I ended up not being able to report the harassment at the Beth El Synogogue. I was also very shocked at what I had heard. I went home and called the West Hartford, CT police department to talk to to supervisor there about what had happened. I was told to file a complaint and was given to another police officer. That officer would not let me file a complaint.

## DAMAGES

(1) This is a continuation of the damages.

(2) Since on or about April, 2004, I have been feeling excrutiating pain in my breasts and in my nipples. In addition, some of my nipple on both breasts has been removed. I am getting treatment for this at the Breast Health Center in Springfield, MA.

(3) In addition, the plaintiff is also experiencing severe asthma. She had asthma until she was 13 years old. It returned five years ago, in 2004, as a result of the pain and suffering and stress that the defendants have put her through. Since 2004, at different time, the defendant has had such problems with breathing that she has thought that she would need to call an ambulance for oxygen. Since 2004, she has been using an albuterol inhaler, plus at different time, singular and advair. Currently, the plaintiff is feeling pain in her lung and is having a difficult time with breathing.

(4) Because of what is going on, the plaintiff has been homebound for almost a month. She must use an aide to do grocery shopping and laundry. The plaintiff cannot even use her car. In addition, she cannot even go outside to walk to the end of the street to mail a letter. If she tried this, she would fall down on the ground after walking three steps out her door and then need medical attention.

16
MSS

(5) The plaintiff went to Mercy Hospital in Springfield, MA to have a doctor look at her upper lip. It had been split apart and was now healing. It felt itchy and it hurt. The doctor tore her lip apart more and the plaintiff had to tell him to stop it. The doctor stopped. As the plaintiff was discharged the nurse said to her, "Now you need counseling." The plaintiff was in a state of shock. She reported this incident to the Mercy Hospital Risk Management Department which took a written report.

(6) The plaintiff went to the Boston University School of Dentistry on or about May, 2009. It was decided that the tooth that bothered her needed to be extracted. The tooth was pulled. The dentist who did it left a piece of tooth in the gum that the plaintiff did not find until she left the facility. In addition, the dentist gave her a prescription for vicoden. The plaintiff does not take pain killers so was able to find the tooth that was left in. When the plaintiff got home she called the Boston University School of Dentistry and cancelled all appointments. She then called her regular dentist, Dr. Lai. He told her that he does not work on teeth where work is already in progress. He gave me a referral to another dentist. I then made an appointment with a private dentist to have the piece of tooth left in the gum removed. When it came time for the appointment, she called the dental office to confirm the appointment. The dental office was closed. Now gum has grown over the piece of tooth and in order for it to be pulled, I will need x-rays, the gum will have to be split open to find the tooth and then it will be pulled. This is pain and suffering as well as an added expence for the plaintiff.

(7) The plaintiff has a primary care physician, Carolyn Brown, M.D. She asked this doctor for a tank of oxygen and a mask. The doctor refused to give it to her and did not ask her to make an appointment to make sure whether or not it was needed. In addition, due to this situation, Carolyn Brown, MD, sent me a letter telling me that I would need to find a new doctor.

(8) On June 11, 2009, the Plaintiff hired Capiuanos to get her an aide to go shopping for her. The aide came over to her home on June 12, 2009, did the shopping and gave the groceries to put in hr refridgerator. During this time the plaintiff had her back turned to the aide. Several days later, on June 14, 2009, the plaintiff went to pay her storage bill and was looking for her VISA bank debit cards. She has accounts at two banks – Peoples Bank and Bank of America. Both of the debit cards were gone. It must have been the aide who took the cards as the last person the plaintiff had in her home was the aide.

*I found the next day 15, June they were on the back. The job not did how I know got they there USS*

MADE UNDER THE PAINS AND PENALTIES OF PERJERY

Respectfully submitted,

Marjorie S. Soforenko, pro se
189 Nassau Drive
Springfield, MA 01129
1-413-783-5812

Date 6/20/09

17

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

Hampden, ss.                                          Docket #: 08-943

Marjorie S. Soforenko                                )
            Plaintiff                                )
                                                     )
v.                                                   )
                                                     )
David Samuels,                                       )
University of Massachusetts                          )
Amherst, MA                                          )
            Defendent                                                    )
and                                                  )
                                                     )
Springfield Police Department/City of Springfield,   )
Northampton Police Department/City of Northampton    )
University of Massachusetts/Amherst, MA              )
            Defendents                               )

CONTINUATION OF
~~AMENDMENT TO~~ COMPAINT, DOCKET NO. 08-943
MSS

Now comes the plaintiff, Marjorie S. Soforenko, who requests of the Court that she be
able to add the following information to her Complaint, Docket #: 08-943.

The plaintiff would like to add the University of Massachusetts in Amherst
Massachusetts to her complaint as a defendant. When she met with one of the Deans
of the Anthropology Department in 2004 or 2005 about the matter, the Dean told the
plaintiff that she could sue the University of Massachusetts regarding what David
Samuels did to me. This also means that the University of Massachusetts was admitting
the guilt of David Samuels. In addition, she said that David Samuels represents the
University of Massachusetts so I should sue the University of Massachusetts.
Consequently, I am adding the University of Massachusetts as a defendant. David
Samuels is one of the faculty members of the Anthropology Department at the University
of Massachusetts/Amherst.

Mr. Samuels has been continually criminally harassing me, stalking me and slandering
me through the police department and or private detectives and/or the FBI from 2004 –
current. Therefore, the University of Massachusetts falls within the statute of
limitations.

I would also like to add to my complaint that the police department or/and the FBI have
used electricity on me to wear down bone and skin. For example, I now have little pock

18

marks next to the outside of my eyes which makes it look like I have deep crows feet next to my eyes. In addition, I believe that my eyes are being made smaller and they are bing misshapen so that I no longer look like my mother. I am supposed to have her eyes. Electricity has also been used in my genitals and it severely frightens me as it may result in loss of consortium. This has been a continuing problem. For example, it was used on me just yesterday and today. I have told my gynocologist about it, Dr. Hanni Haddad, and I will be going for an examination with him immediately so that I know what the electric shock has done.

In 2006, I was appointed Guardian Ad Litem in a case with the Worcester Probate and Family Court. When I went in for a Motion, Judge Ricci said to me, David Samuels started all of this." I could not believe what I was hearing. He was now harassing me while I was at my job.

I would also like to add that in the United States of America there is a Bill of Rights that states that there is Freedom of Assembly, this is the Third Article. The Third Article also states that in the United States citizens have Freedom of Speech. We also have the right to petition the Government for a redress of grievances. This includes the Commonwealth and municipalities.

The following is also added to the complaint. On or about July 29, 2008, the plaintiff went to the police department to report an annoying telephone call. The police officers on duty told her that "You can sue everyone so we are trying to find something wrong with you." She was also told, "You are not a danger." Another officer said, "Everything was confidential."

Respectfully submitted,

Marjorie S. Soforenko, pro se
189 Nassau Drive
Springfield, MA 01129
1-413-783-5812

Date 7/12/09

19